UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE and JOHN DOE,[1] <br><br> Plaintiffs, <br><br> vs. <br><br> CARL RISCH, Assistant Secretary for Consular Affairs, U.S. Dept. of State, et al.,[2] <br><br> Defendants. | Case No: C 18-04583 SBA <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Dkt. 31, 33 |

In this immigration mandamus action, Plaintiffs seek an order compelling Defendants to adjudicate their Form I-730 petition for derivative asylum. Presently before the Court are the parties' cross-motions for summary judgment. Having read and considered the papers filed in connection with this matter and being fully informed, the Court GRANTS Plaintiffs' motion and DENIES Defendants' motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] Magistrate Judge Nathanael Cousins granted Plaintiffs' motion to proceed under the pseudonyms Jane Doe and John Doe. Dkt. 14.

[2] Plaintiffs name as party-defendants: Carl Risch, Assistant Secretary for Consular Affairs, Bureau of Consular Affairs, U.S. Department of State ("DOS"); Edward Ramotowski, Deputy Assistant Secretary for Visa Services, Bureau of Consular Affairs, DOS; Paul Malik, Consul General to the U.S. Embassy & Consulate in the United Arab Emirates, DOS; and L. Francis Cissna, Director of the U.S. Citizenship and Immigration Services ("USCIS"), Department of Homeland Security (collectively, "Defendants"). Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Philip Frayne in place of Paul Malik and Kenneth Cuccinelli II in place of L. Francis Cissna.

## I. BACKGROUND

### A. THE FORM I-730 PETITION PROCESS

"A spouse or child . . . of an alien who is granted asylum under [section 1158(b)] may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A). A principal asylee may request "accompanying or following-to-join benefits for his or her spouse or child(ren) by filing a separate Request for Refugee/Asylee Relative [i.e., a Form I-730 petition] . . . in accordance with the form instructions." 8 C.F.R. § 208.21(d). To establish eligibility for derivative asylum, four requirements must be met: (1) the beneficiary's identity must be verified; (2) there must be a qualifying family relationship between the petitioner and the beneficiary; (3) the beneficiary cannot be subject to any of the mandatory bars to asylum; and (4) the beneficiary must merit a favorable exercise of discretion. Declaration of Seven J. Pollnow ("Pollnow Decl.") ¶ 7, Dkt. 34.[3]

A follow-to-join petition is processed in two distinct phases. Id. ¶ 8. First, the principal asylee in the United States files the I-730 petition, which is processed by USCIS at a domestic Service Center. Id. If approved, the beneficiary is then interviewed to determine if he or she is eligible to receive documentation authorizing travel to the United States. Id. ¶ 9. When a beneficiary is located outside the United States and in a location where USCIS does not have a presence, petitions approved by USCIS are forwarded to the DOS National Visa Center for transfer to the U.S. embassy or consulate with jurisdiction. Id. ¶ 10. In such circumstances, DOS is authorized to conduct the interviews, make eligibility determinations, and issue travel documentation. Id.

Beneficiaries of follow-to-join petitions are subject to various "biographic and biometric background and security checks" throughout the petition process. Id. ¶ 15. As is pertinent here, Security Advisory Opinion ("SAO") biographic checks may be initiated by

---

[3] Steven J. Pollnow serves as a Section Chief at USCIS's Nebraska Service Center. Pollnow Decl. ¶ 1. His duties include overseeing the adjudication of Form I-730, Refugee/Asylee Relative Petitions for asylum-based follow-to-join beneficiaries. Id. ¶ 2.

the embassy/consulate following a beneficiary's DOS interview. Id. ¶ 16. SAOs are initiated for beneficiaries who "are nationals of a country that the U.S. government has designated as requiring this security check or who otherwise meet the requirements for an SAO." Id. SAOs are conducted by the Federal Bureau of Investigation ("FBI") and intelligence community partners. Id. "When an SAO is required, a cleared response must be received before issuance of a travel document to a beneficiary." Id.

### B. PLAINTIFFS' FOLLOW-TO-JOIN PETITION

Jane Doe is a native citizen of Iran and a legal permanent resident of the United States. Declaration of Jane Doe ("Doe Decl.") ¶ 1, Dkt. 32-1. She is married to John Doe, who still lives in Iran. Id. ¶ 2. They have two minor sons. Id.

Jane Doe and her sons arrived in the United States on a tourist visa in December 2015. Id. ¶ 3. Shortly thereafter, Jane Doe converted to Christianity. Id. In Iran, "conversion from Islam is deemed apostasy and is punishable by death." Id. ¶ 4. Fearing religious persecution if she returned to Iran, Jane Doe applied for asylum for herself and her children. Id. They were granted asylum on January 5, 2017. Id.[4]

On January 30, 2017, Jane Doe filed a Form I-730 Petition on behalf of her husband, John Doe. Id. ¶ 5. She also submitted a request for expedited processing based on the distress of their younger son. Id. ¶ 6. Plaintiffs' younger son suffers from extreme depression and anxiety due to separation from his father and fears that his father may be harmed in Iran. Id. His mental suffering is so severe that he attempted suicide. Id. ¶ 7.

On August 11, 2017, Plaintiffs' I-730 petition was preliminarily approved by USCIS and forwarded to the United States Embassy in Abu Dhabi, United Arab Emirates (the "Embassy") for further processing. Id. ¶ 8. On September 13, 2017, the National Visa Center notified Plaintiffs' that their request for expedited processing had been approved. Id. ¶ 9. On November 16, 2017, John Doe appeared at the Embassy for his interview. Id.

---

[4] To be eligible for asylum, Jane Doe had to show that she is unable or unwilling to return to Iran because of a well-founded fear of persecution on account of her religion. Ahmen v. Keisler, 504 F.3d 1183, 1191 (9th Cir. 2007) (citing 8 U.S.C. § 1101 (a)(42)(A)).

¶ 10.  At the end of the interview, John Doe was advised that his petition was being placed in administrative processing, where it has remained.  Id. & Ex. A.

Plaintiffs assert that John Doe's continued separation from his family is causing much pain and hardship.  Id. ¶ 11.  The family fears that John Doe is at risk of persecution in Iran due to his wife's conversion to Christianity.  Id.  As a result, Plaintiffs' youngest son continues to suffer from extreme anxiety and depression.  Id.  According to the treating psychologist, Plaintiffs' youngest son suffers debilitating panic and anxiety attacks and has experienced an increase in suicidal thoughts.  Id. & Ex. B.

Defendants admit that John Doe meets the criteria for derivative asylum based on his qualifying relationship to a principal asylee.  Pollnow Decl. ¶ 6.  They confirm that USCIS approved Plaintiffs' I-730 petition on August 11, 2017, and that the DOS interviewed John Doe at the Embassy on November 16, 2017.  Id. ¶ 17.  Defendants aver: "To date, USCIS has not received complete results of the security vetting process on the beneficiary, specifically the SAO, and until the complete results are received, and are deemed satisfactory for purposes of the [*sic*] determining the beneficiary's eligibility for derivative asylum status, no travel documentation can be issued."  Id.

### C.  THE INSTANT ACTION

Plaintiffs filed the instant action on July 30, 2018 and filed the operative First Amended Complaint on November 5, 2018.  Dkt. 1, 25.  They bring a single cause of action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to adjudicate their I-730 petition.

A scheduling order was entered in this action in accordance with General Order 61.  Dkt. 6.  Thereafter, the parties filed several stipulations extending the deadline for Defendants to file an answer.  See Dkt. 21, 23, 26, 29.  Defendants' counsel advised that USCIS was "working to adjudicate Plaintiff's pending I-730 Petition," and the extensions were sought "to allow time for USCIS to continue [that] process[.]"  Dkt. 29 ¶¶ 3-4.  Defendants filed an Answer on December 21, 2018.  Dkt. 28.

**1**  Thereafter, Plaintiffs filed the instant Motion for Summary Judgment and
**2**  Memorandum in Support of their Motion for Summary Judgment ("Mot."). Dkt. 31, 32.
**3**  Defendants' filed a combined Opposition to Plaintiffs' Motion for Summary Judgment and
**4**  Cross-Motion for Summary Judgment ("Cross-Mot."). Dkt. 33. Plaintiffs filed an
**5**  Opposition and Reply ("Opp'n"), Dkt. 37, and Defendants filed a Reply ("Reply"), Dkt. 38.
**6**  The cross-motions are fully briefed and ripe for adjudication.

## II. <u>LEGAL STANDARD</u>

"Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Salazar-Limon v. City of Houston</u>, 137 S. Ct. 1277, 1280 (2017) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that establish the absence of a genuine dispute of material fact. <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986)). If the moving party meets its burden, the burden shifts to the non-moving party to go beyond the pleadings and identify specific facts demonstrating the existence of a triable issue. <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 323-24).

## III. <u>DISCUSSION</u>

Through this action, Plaintiffs seek to compel Defendants to adjudicate their I-730 petition.[5] The parties have filed cross-motions for summary judgment.

### A. JURISDICTION

As a threshold matter, Defendants assert that the Court lacks jurisdiction "to compel the agency action in question because Congress has divested the courts of jurisdiction over immigration suits that concern decisions or actions committed to agency discretion."

---

[5] Plaintiffs invoke both the APA and the Mandamus Act in a single cause of action to compel Defendants to adjudicate their I-730 petition. Where, as here, the relief sought under the APA and the Mandamus Act is essentially the same, the Ninth Circuit had elected to analyze a plaintiff's entitlement to relief under the APA. <u>Independence Min. Co. v. Babbitt</u>, 105 F.3d 502, 507 (9th Cir. 1997) (citing <u>Japan Whaling Ass'n v. American Cetacean Soc'y</u>, 478 U.S. 221, 230 n.4 (1986) (construing a claim for mandamus under 28 U.S.C. § 1361 as, "in essence," one for relief under § 706 of the APA)). This Court likewise analyzes Plaintiffs' entitlement to relief under the APA.

Cross-Motion at 5 n.1 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)).  No further argument is provided.  Instead, Defendants "recognize that there have been a number of opinions from this District and others within the Ninth Circuit finding jurisdiction over claims of unreasonable delay" in analogous cases.  Id. (citing Islam v. Heinauer, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014), and cases cited therein).[6]

Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), courts are divested of jurisdiction to review immigration-related decisions or actions (other than the granting of relief under § 1158(a)), "the authority for which is specified [by statute] to be in the discretion of the Attorney General or the Secretary of Homeland Security."  The decision to grant or deny derivative asylum status is committed to agency discretionary by statute.  8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted asylum under this subsection *may* . . . be granted the same status as the alien . . . .") (emphasis added); see also Ngassam v. Chertoff, 590 F. Supp. 2d 461, 464 (S.D.N.Y. 2008).  The ultimate decision to grant or deny Plaintiffs' I-730 petition is therefore insulated from judicial review.  Id.

As Defendants acknowledge, however, courts in this district—including this Court—have consistently held that § 1252(a)(2)(B)(ii) does not divest courts of subject matter jurisdiction over claims that an agency has *unlawfully withheld* or *unreasonably delayed* the processing of immigration-related petitions.  Islam, 32 F. Supp. 3d at 1069; see also Dong v. Chertoff, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007) (Armstrong, J.) ("8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction to hear an allegation that the determination of an application for adjustment of status has been unlawfully withheld").  Even where no time limits are imposed by the enabling-statute, Defendants have a non-discretionary duty to adjudicate immigration-related petitions "within a reasonable period of time."  5 U.S.C. § 555(b); see also Islam, 32 F. Supp. 3d at 1069.

---

[6] Ordinarily, Defendants' one-sentence argument—relegated to a footnote—would be insufficient to present the matter to the Court for determination.  However, because the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006), the Court briefly addresses this issue.

"'To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law.'" Islam, 32 F. Supp. 3d at 1069 (citation omitted).

The Court finds the rationale of these prior cases persuasive, and Defendants offer no reasoned basis for the Court to deviate therefrom. Accordingly, the Court has subject matter jurisdiction over Plaintiffs' claim of unreasonable delay.

## B. TRAC FACTORS

The underlying facts are not in dispute; rather, the parties dispute whether the government's delay in adjudicating Plaintiffs' I-730 petition is unreasonable. See 5 U.S.C. § 706(a) (courts shall "compel agency action unlawfully withheld or unreasonably delayed"). In determining whether agency action is unreasonably delayed under 5 U.S.C. § 706(a), the Ninth Circuit has adopted the so-called TRAC factor test. Brower v. Evans, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (citing Telecomm. Research & Action v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984)). The six factors to be balanced are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. (quoting Indep. Mining Co., 105 F.3d at 507 n.7 (quoting TRAC, 750 F.2d at 80) (quotation marks, internal citations, and alterations omitted)).

### 1. First Factor: A Rule of Reason

The first TRAC factor teaches that the timing of agency action is governed by a "rule of reason." TRAC, 750 F.2d at 80. Although the length of the delay is a primary consideration, it is not dispositive. Islam, 32 F. Supp. 3d at 1071. "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." Id. (quotation marks and citation omitted). Courts typically consider the source of the delay, including the complexity of the investigation and

the extent to which each party contributed to the delay. Singh v. Still, 470 F. Supp. 2d 1064, 1068 (N.D. Cal. Jan. 8, 2007) (quotation marks and citations omitted).

In the instant case, Plaintiffs' I-730 petition has been pending for nearly two and half years. There is no evidence that the delay is attributable, in whole or in part, to Plaintiffs. Nor is there any evidence that the investigation is especially complex. Rather, Defendants assert only that "USCIS has not yet received the complete results of the security vetting process," i.e., the SAO, for John Doe. Cross-Mot. at 6. They argue that, "[g]iven the importance of a complete security vetting process," the delay at issue here is not unreasonable. Id. As discussed below, however, Defendants' bare assertions are insufficient to justify a delay of this length. Although Defendants aver that John Doe's SAO has not yet been completed, they provide *no further detail*. Among other things, they fail to provide any information as to why an SAO is required in this case, why it has taken so long to complete an SAO, and whether any particular issue of concern has arisen during the security vetting process that has caused or contributed to the delay.

As courts in this district have recognized, national security concerns rightly factor into an evaluation of the reasonableness of Defendants' delay. Chen v. Chertoff, No. C 07-2816 MEJ, 2008 WL 205279, at *3 (N.D. Cal. Jan. 23, 2008). "However, the mere invocation of national security is not enough to render agency delay reasonable per se." Singh, 470 F. Supp. 2d at 1069 (finding that the government's claim of "[security] issues requiring further inquiry" was insufficient absent "further information"). Defendants "cannot simply point to a pending FBI background check to establish that any delay in processing [a petition] is reasonable." Chen, 2008 WL 205279, at *3. "National security interests and the complexity of the background check process can only excuse *reasonable delay*." Id. (emphasis added). Here, Defendants provide "no particularized facts to suggest that these concerns apply with special force" to John Doe's petition or that his SAO is "otherwise subject to special circumstances." Id.; see also Kousar v. Mueller, 549 F. Supp. 2d 1194, 1199 (N.D. Cal. 2008) ("Although national security certainly justifies a thorough name check process, there is no contention that Plaintiff's application is particularly

complex or any evidence as to why the name check caused the application processing to take far longer than the 180 days suggested by Congress.").

Defendants cite Islam for the proposition that courts in this district "have generally found delays of four years or less not to be unreasonable." Cross-Motion at 8 (citing Islam, 32 F. Supp. 3d at 1071-72); see also Reply at 1. Islam and the cases it surveys are inapt, however, because they involve "holds on Form I-485 Applications due to findings of terrorist-related inadmissibility." 32 F. Supp. 3d at 1071 (and cases cited therein, including Khan v. Scharfen, No. 08-1398 SC, 2009 WL 941574 (N.D. Cal. Apr. 6, 2009)). A determination of whether to grant an exception to terrorist-related inadmissibility "is a complicated process, involving inter-agency consultation." Khan, 2009 WL 941574, at *9. Such cases are "distinguishable from the now-typical case involving a delay in processing an applicant's FBI background check." Id. at *8 (noting that, in a typical background check case, "there are no facts specific to the applicant which are causing the delay, or which implicate national security concerns").

With regard to typical background check cases, courts in this district have found that, "under normal circumstances, a delay of approximately two years due to an uncompleted FBI background check is unreasonable as a matter of law." Chen, 2008 WL 205279, at *3 (and cases cited therein); accord Kousar, 549 F. Supp. 2d at 1199 (and cases cited therein). Here, just shy of two and a half years have passed since Plaintiffs' petition was filed. Accordingly, the first factor tips in Plaintiffs' favor.

### 2. Second Factor: Congressional Timetable

The second TRAC factor provides that a timetable or other indication of the speed with which Congress expects the agency to proceed may "supply content" for the rule of reason. TRAC, 750 F.2d at 80. Absent "exceptional circumstances," administrative adjudication of a *principal* asylum application "shall be completed within 180 days" of the date the application is filed. 8 U.S.C. § 1158(d)(5)(A)(iii). There is no congressionally-mandated timetable for adjudicating *derivative* asylum petitions. However, "[i]t is the sense of Congress that the processing of an immigrant benefit application should be

completed not later than 180 days after the initial filing of the application[.]" 8 U.S.C. § 1571(b). Although § 1571(b) is merely precatory, this provision nonetheless suffices to "tip the second TRAC factor in [Plaintiffs'] favor." Islam, 32 F. Supp. 3d at 1073.

Defendants respond that § 1571(b) "does not reflect the notion that the government must take extra care with an application that requires additional security vetting." Cross-Mot. at 6-7. The fact that certain circumstances may justify a departure from the standard processing time does not counsel in favor of disregarding Congress's guidance. Rather, similar to the allowance in § 1158(d)(5)(A)(iii) for "exceptional circumstances," that is a matter for the Court to evaluate on a case-by-case basis. As discussed above, Defendants have not shown any circumstances unique to this case that justify a lengthy delay in completing the security vetting process. On the other hand, approximately 900 days have elapsed since the filing of Plaintiffs' petition, which is five times longer than the 180-day benchmark set forth in § 1571(b). Consequently, Defendants are well outside the expected processing time without sufficient justification.

### 3. Third & Fifth Factors: Human Welfare & Interests Prejudiced

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." Islam, 32 F. Supp. 3d at 1073. It is undisputed that human health and welfare are at stake where an asylee files a follow-to-join petition for a family member still residing in their native country. See Cross-Mot. at 7 (acknowledging that "Plaintiffs assert legitimate concerns regarding human health and welfare"). Delay that might be reasonable in another context is therefore "less tolerable" here. TRAC, 750 F.2d at 80.

Further, the Court finds that the specific interests prejudiced by delay in processing I-730 petitions are weighty. As set forth above, follow-to-join petitions may be filed on behalf of an asylee's spouse or child. 8 U.S.C. § 1158(b)(3)(A). Thus, as is the case here, delay in processing such petitions may result in extended family separation. Doe Decl. ¶ 11 (describing separation of John Doe from his wife and minor sons). Additionally, because the principal asylee has been granted asylum, there may be a credible threat of persecution

in the native country.  See Ahmen, 504 F.3d at 1191.  Here, the family fears for John Doe's safety in Iran due to Jane Doe's conversion to Christianity.  Doe Decl. ¶¶ 6-7, 11.  In this case, Plaintiffs also assert that the ongoing family separation and fear of persecution have caused their minor son to suffer extreme anxiety and depression.  Id.[7]

Again, Defendants do not dispute that "Plaintiffs assert legitimate concerns regarding human health and welfare[.]"  Cross-Mot. at 7.  They simply respond that they "have a strong [countervailing] interest in completing security vetting of derivative asylee applicants before permitting them to enter the United States."  Id.  "Undoubtedly," national security is an interest "of the highest order."  Singh, 470 F. Supp. 3d at 1069.  As discussed above, however, "the mere invocation of national security is not enough to render agency delay reasonable per se."  Id.  The third and fifth factors therefore tip in favor of Plaintiffs.

### 4. Fourth Factor: Higher or Competing Priorities

The fourth TRAC factor considers the effect of expediting delayed action on agency activities of a higher or competing priority.  TRAC, 750 F.2d at 80.  Defendants make the bald assertion that expediting Plaintiffs' application would divert resources to this case, "to the detriment of other duties carried out by the various government offices involved."  Cross-Mot. at 7.  Defendants do not identify those other duties or make any effort to prioritize them, however.  Defendants further assert that "it would be unfair for [John Doe's] SOA to be prioritized at the expense of others ahead of [him] in the queue."  Id.  Defendants do not establish that there is a queue, however, let alone John Doe's place therein.  There is no evidence before the Court as to the number of I-730 petitions/SOAs currently pending or how many of those petitions/SOAs have been pending longer than John Doe's.  Given that nearly two and a half years have elapsed since Plaintiffs' petition was filed and more than 20 months have elapsed since John Doe completed his interview,

---

[7] The Court notes that adjudication of Plaintiffs' petition will not necessarily result in John Doe being granted derivative asylum, and thus, may not alleviate the harms described above.  Given that USCIS preliminarily approved his petition, however, it is plausible that John Doe will benefit from the final adjudication of his petition.  In that event, delay is prejudicial.  Further, the uncertainty that Plaintiffs face while the petition sits "in limbo" inflicts its own sort of harm.  See Islam, 32 F. Supp. 3d at 1070, 1073.

the Court finds that expediting adjudication of Plaintiffs' petition would not unduly burden agency resources. Thus, the fourth factor tips in Plaintiffs' favor.

### 5. Sixth Factor: Impropriety

Lastly, the sixth TRAC factor teaches that the Court need not find any impropriety lurking behind agency lassitude to conclude that agency action is unreasonably delayed. TRAC, 750 F.2d at 80. Defendants cite Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105 (D.D.C. 2005), as providing a corollary to that rule, i.e., that the good faith of the agency weighs against mandamus. Cross-Mot. at 7. Defendants err in reading Liberty Fund too broadly, however. Liberty Fund does not stand for the proposition that the absence of "any improper purpose," Cross-Motion at 7, weighs against mandamus. Indeed, this would run counter to TRAC's holding that bad faith is not required for a finding of unreasonable delay. Rather, Liberty Fund stands for the proposition that an agency's good faith "*in addressing the delay* weighs against mandamus." 394 F. Supp. 2d at 120 (emphasis added) (providing that a court may decline to issue a writ expediting agency action where the agency has already taken steps to address the delay and there is little reason to believe that a court order is necessary to sustain improvement or spur greater effort).

In Liberty Fund, the agency provided a sound justification for the delay (i.e., a change in the law that resulted in an influx of applications) and documented its efforts to reduce the backlog and rectify the delay. 394 F. Supp. 3d at 120. Here, by contrast, Defendants do not provide a sound justification for the delay. Although they assert that an SAO is required and has not yet been completed, they fail to identify any circumstance or concern that necessitates an SAO in this case or warrants the lengthy delay in completing the same. Nor do Defendants identify any action taken to ensure the prompt adjudication of Plaintiffs' petition. To the contrary, they fail to provide even an estimated timeframe to complete the SAO. They assert only that the petition cannot be adjudicated "until the complete results are received." Pollnow Decl. ¶ 17. This assertion does not address the delay faced by Plaintiffs. Consequently, while the Court does not find that Defendants

have acted in bad faith to cause the delay, neither does it find that they have acted in good faith to address the delay such that judicial intervention is rendered unnecessary.[8]

## IV. CONCLUSION

In view of the forgoing, the Court finds that Defendants have unreasonably delayed in adjudicating Plaintiffs' I-730 petition, which has been pending for nearly two and a half years. Defendants have not shown that any portion of the delay is attributable to Plaintiffs, that the petition is unusually complex, that higher or competing priorities necessitate a delay of this length, or that any effort has been made to ensure the prompt adjudication of the petition. Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs' motion for summary judgment is GRANTED and Defendants' cross-motion for summary judgment is DENIED. Defendants shall adjudicate Plaintiffs' I-730 petition within 30 days of the date this Order is filed. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: July 26, 2019

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

---

[8] For the first time in their Opposition, Plaintiffs assert that bad faith or improper purpose can be inferred here because Defendants failed to mention an SAO when they requested extensions of the time to file an answer. Opp'n at 8. According to Plaintiffs, it can be inferred that the SAO was not initiated until after the instant action was filed, and thus, that "there has been impropriety behind the government's actions." Id. Where an agency has delayed in bad faith, the court may find that delay is unreasonable. See Indep. Min. Co., 105 F.3d at 510 (quoting In re Barr Labs., Inc., 930 F.2d 72, 76 (D.C. Cir. 1988) ("[w]here [an] agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities")). The Court finds no evidence of bad faith here, however. Although Defendants do not state when the SAO was initiated, their representations made in connection with the extension requests do not necessarily show that an SAO was initiated *after* the action was filed. Furthermore, even if Defendants delayed in initiating an SAO, there is no evidence to suggest that this was due to bad faith, as opposed to mere inadvertence or backlog. In any event, as stated above, bad faith is not required for a finding that agency action is unreasonably delayed.